CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

RAVI T. NARAYAN (CABN 331858)
Acting Chief, Criminal Division

LORINDA I. LARYEA (DCBN 99769)
Acting Chief, Fraud Section

JACOB FOSTER (CABN 250785)
Acting Deputy Chief
EMILY GURSKIS (VABN 85973)
Assistant Chief
Fraud Section, Criminal Division

    1400 New York Avenue, NW
    Washington, D.C. 20530
    Telephone: (202) 514-2000
    FAX: (202) 514-3708
    Jacob.Foster@usdoj.gov
    Emily.Gurskis@usdoj.gov

KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6912
FAX: (415) 436-7234

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 24-329 CRB |
| Plaintiff, | |
| v. | UNITED STATES' RESPONSE TO DEFENDANT HE'S TRIAL BRIEF REGARDING PROVIDER CHATS |
| RUTHIA HE, A/K/A/ RUJIA HE, and DAVID BRODY, | |
| Defendants. | |

The government writes in response to Defendant He's trial brief, which previews her "likely objection[s]" to eleven exhibits (the "Provider Chats") in which former Done provider and trial witness Nwamaka Emeruem as well as other nurse practitioners employed by Done discussed their concerns about how Defendant He, Defendant Brody, and their company Done's practices improperly restricted clinicians' ability to properly exercise their medical judgment. *See* ECF No. 421 at 1. Defendant He claims that these conversations constitute hearsay, rather than admissible statements of agents under Federal Rule of Evidence 801(d)(2)(D), primarily because the Done providers communicated on private devices and are purportedly independent contractors. *See id.* (claiming exhibits are inadmissible because they were "exchanged on the *personal phones* of [independent] contractors"). Defendant He's conclusory claim that the practitioners were independent ignores the indictment's many allegations that she affirmatively controlled Done's practitioners through policies and procedures designed to disincentivize proper practice. As Anna Amour Ross testified, she was not treated as an independent contractor like the contract said because Defendant He controlled medical practices on the Done platform. Defendant He's control of practitioners is a key means by which she furthered the charged distribution conspiracy, and the government is entitled to present evidence on that subject. Defendant He's arguments also put the cart before the horse as an evidentiary matter, ignoring this Court's clear guidance that the admissibility of statements by former employees like Ms. Emeruem ultimately turns on the foundation laid during testimony. Ms. Emeruem will lay that foundation, and defendant He's premature objections should be overruled.

I. **DEFENDANTS' LABEL ON THE RELATIONSHIP BETWEEN DONE AND PROVIDERS IS NOT DETERMINATIVE**

As the Court explained during the last pretrial conference, the admissibility of statements under Rule 801(d)(2)(D) is "simply a function of whether the person acted as an agent of the defendants or one of them." Sept. 22 Hr'g Tr. at 26. In so explaining, the Court made clear that Defendant He's focus on whether the Done practitioners in the Provider Chats were employees or independent contractors (which the government does not concede) is ultimately "not controlling . . . and the question of agency is a different factor." *Id.*; *see also id.* at 27 ("[I]t's an agency determination, not an employee/independent contractor determination."). That explanation is entirely consistent with the

rule, which requires only three criteria for admissibility: "(1) the statement must be made by an agent or employee of the party against whom the statement is being offered; (2) the statement must concern a matter within the scope of that employment relationship; and (3) the statement must be made while the declarant is yet employed by the party." *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.2d 993, 999 (9th Cir. 2019). The Ninth Circuit has held that the label parties place on a relationship is not determinative—the Court must examine the actual working relationship and degree of control exercised through the following non-exhaustive list of factors: (1) the control exerted by the employer, (2) whether the one employed is engaged in a distinct occupation, (3) whether the work is normally done under the supervision of an employer, (4) the skill required, (5) whether the employer supplies tools and instrumentalities, (6) the length of time employed, (7) whether payment is by time or by the job, (8) whether the work is in the regular business of the employer, (9) the subjective intent of the parties, and (10) whether the employer is or is not in business. *United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010); see also Restatement (Third) of Agency § 7.07(f).

And as the Court correctly recognized, admissibility is ultimately "a function of proof" that simply requires "laying the foundation." Sept. 22 Hr'g Tr. at 27; *see also, e.g.*, *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986) (Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment).

## II. DEFENDANTS TREATED PROVIDERS LIKE EMPLOYEES OR AGENTS

The providers here were plainly agents of Done, having entered employment contracts that required them to provide services to paying subscribers of Defendants' company. Far from treating the five nurse practitioners in the Provider Chats as purely independent contractors, Defendant He actually held out all five of the very same practitioners— including Ms. Emeruem— as Done's "Medical Team" in presentations to prospective investors. *See, e.g.* Trial Exhibit 74 (attached hereto as Exhibit A) at Page 18 (picturing all five employees in the Provider Chats, including Ms. Emeruem in the lower right). Consistent with the testimony of Ms. Amour Ross and the anticipated testimony of additional government witnesses, Defendant He exercised day-to-day control over Done providers' medical decisions, prescribed specific appointment durations, controlled follow-up cadence, issued clinical

2

policies on when to fill Adderall prescriptions, mandated participation in regular meetings, and even dictated which patients providers could see. Defendant He controlled every aspect of the operation with Defendant Brody a fig-leaf. Witnesses will describe Defendant He as a micromanager who had final approval authority over both clinical and non-clinical matters.

Even during employment interviews, as Patrick Schoenecker testified, Done made clear its expectations of clinicians, such as willingness to cap intake appointments at 25 minutes and, as Anna Amour Ross testified, the Done model pushed stimulants over non-controlled substances and other common ADHD therapies. The policies were set and enforced by Defendants, who also were involved in suspension and termination decisions. Defendant He also devised and maintained the evaluation system for providers and their pay structure, hourly pay for intake appointments combined with a monthly rate for each patient on the provider's panel. Without providers on the platform, Done would cease to exist. Many of the providers who quit, including the nurses on the exhibits in question—and some who did not accept the job in the first place—did so because of the significant restrictions and control on their medical judgment put in place by Done. Providers who stayed with Done typically relied on the platform as their sole source of income.

### III. THE FORUM OF COMMUNICATIONS IS IRRELEVANT TO THE 801(D)(2)(D) INQUIRY

Defendant He's conclusory assertion that the Provider Chats are simply "griping and gossiping about [Defendant] He and [Defendant] Brody" also ignores that work-related complaints fall comfortably within the scope of Rule 801(d)(2)(D). As the Ninth Circuit has repeatedly made clear over decades, "statements need only *concern* matters within the scope of the agency; they need not be made within the scope of the agency." *Weil*, 922 F.3d at 999 (quoting *In re Sunset Bay Assocs.*, 944 F.2d 1503, 1519 (9th Cir. 1991)) (emphasis in original). Accordingly, an employee or agent's statements are admissible under 801(d)(2)(D) even if they are made via personal messaging applications, and even if they are kept private from the employer or supervisor altogether.[1] *See, e.g.*,

---

[1] Defendant He's suggestion that individuals cannot discuss work matters on personal devices is ironic, considering the indictment alleges that Defendant He herself used "personal devices to communicate about company business." ECF No. 1 at 74. Ultimately, there is no inherent legal significance to the use of personal devices. The relevance of using personal devices is a question of fact for the parties to test and the jury to weigh.

3

*Simpson v. Home Depot*, 311 F. Supp. 3d 862, 867–868 (N.D. Miss. 2018) (affirming admission of text messages between employees discussing the contemplated firing of another); *Scalia v. Ghosn*, 451 F. Supp. 3d 1215, 1221 (W.D. Okla. 2020) (holding that anonymous statements made to the Department of Labor were "not hearsay pursuant to Fed. R. Evid. 801(d)(2)(D) because Plaintiff offer[ed] them against Defendants and they were made by Defendants' own employees on matters like wages and breaks, which are within the scope of the employee-employer relationship while it existed"); *Walsh v. Fusion Japanese Steakhouse*, 585 F. Supp. 3d 766, 775–76 (W.D. Pa. 2022) (affirming admission of statements to DOL regarding topics such as "each employee's (1) identity; (2) job title and responsibilities; (3) hours worked; (4) rates and methods of pay; (5) direct supervision; and (6) timekeeping" under Rule 801(d)(2)(D)).

Indeed, the Ninth Circuit's decision in *Sunset Bay* directly establishes that the Provider Chats are admissible: "Under circumstances where an employee's superior has instructed the employee to act in furtherance of a fraudulent scheme, statements made by the employee relating to that scheme are admissible against the superior under Fed. R. Evid. 801(d)(2)(D)." 944 F.2d at 1519. *See also McMellon v. Safeway Stores*, 945 F. Supp. 1402 (D. Or. 1996) (affidavits of Safeway employees about illegal dispensation of outdated drugs are admissible). As the table below reflects, each of the Provider Chats consists of statements made by Done practitioners that focus on Defendant He's repeated instructions for them to further her criminal conspiracy:

| Exhibit Number | Participants | Date | Summary of Text Discussion |
|---|---|---|---|
| 61 | Five nurse practitioners employed by Done | July 1, 2020 | <ul><li>Propriety of Defendant He making clinical decisions</li><li>Done's policies regarding the refilling of controlled substances</li><li>Done's method of compensating providers</li><li>Propriety of Done's prescribing and medical recordkeeping practices</li></ul> |
| 72 | Five nurse practitioners employed by | July 14, 2020 to July 28, 2020 | <ul><li>Concern that Done's marketing encourages patients to believe that they will get ADHD</li></ul> |

| | | | |
|---|---|---|---|
| | Done | | • medication so long as they pay Done's fee<br>• Experiences with patients who feel entitled to refills without appointments<br>• Concerns that Done's refill policies will lead to DEA audits, including of providers<br>• Defendant He's refusal to pay providers for additional time documenting patient refills |
| 77 | Five nurse practitioners employed by Done | August 1, 2020 | • Done's refill policies<br>• Done's compensation model<br>• Scheduling patient follow-ups and responding to patient requests |
| 80 | Five nurse practitioners employed by Done | August 4, 2020 to August 5, 2020 | • Done's refill policies<br>• The standard of care for treating patients<br>• Concerns about the legality of Done's prescribing policies |
| 83 | Five nurse practitioners employed by Done | August 7, 2020 | • Disagreements with Done's practice of sending text messages to patients requesting refills without provider follow-up<br>• Concerns that Done's subscription business model cannot be profitable unless Done providers blindly refill controlled substance prescriptions<br>• The need for more providers to adequately treat patients |
| 88 | Five nurse practitioners employed by Done | August 12, 2020 | • Done's practice of transferring patients to providers who would refill prescriptions without an examination or follow up<br>• Defendant He's defense of the transfer policy when notified by concerned providers |
| 95 | Five nurse practitioners employed by Done | August 23, 2020 | • Done members' impression that they could receive whatever medication they wanted<br>• Providers putting Defendant He on notice of that concern |

| | | | |
|---|---|---|---|
| 100 | Five nurse practitioners employed by Done | August 26, 2021 | <ul><li>Nurse practitioners' understanding of the standard of care for treating patients</li><li>Concerns about non-medical employees at Done questioning or limiting participants' practice for treating patients</li><li>Interactions with Defendant He, including during initial recruitment</li></ul> |
| 113 | Five nurse practitioners, four employed by Done and one employed by Done until September 27, 2020 | September 11, 2020 to September 28, 2020 | <ul><li>Done's refill policy</li><li>Discussions with Defendants He and Brody regarding refill policy</li><li>Done's termination of nurse practitioner for refusing to fill prescriptions without follow-up appointments</li></ul> |
| 255 | Two nurse practitioners then-employed by Done and three nurse practitioners formerly employed by Done | January 1, 2021 | <ul><li>Reasons for resigning from Done and difficulty of doing so given lucrative compensation</li><li>Discussion of death of H.B., including that Done prescriber missed that H.B. was receiving suboxone, and discussion of Defendant He's response</li><li>Done felt like a dispensary because it did not meet standards of care</li><li>Resignations of other Done providers and their reasons for leaving</li><li>Ways in which other Done providers failed to meet the standard of care for prescribing</li><li>Disagreement with Defendant Brody's prescribing practices</li></ul> |
| 260 | Two nurse practitioners then-employed by Done and three nurse practitioners formerly employed by Done | January 4, 2021 | <ul><li>Brody's statement at a virtual Christmas party comparing Done providers to Santa Claus "making it as easy to get a prescription as dropping gifts down a chimney"</li></ul> |

As the Advisory Committee Notes to Rule 801(d)(2)(D) make clear, "[a] substantial trend favors admitting statements related to a matter within the scope of the agency or employment." The Providers Chats plainly relate to matters within the scope of the providers' employment, and they are directly relevant to Defendant He's participation in a criminal conspiracy. And as reflected above, the exhibits also reference conversations between the providers and the defendants themselves, such that the defendants' statements would be admissible under Rule 801(d)(2)(A) as well. The Provider Chats are decidedly not subject to exclusion before Ms. Emeruem even has an opportunity to lay a foundation for their admission.

## IV. DEFENDANT'S ARGUMENTS ABOUT DEFENDANT HE'S CONTROL OVER HER PROVIDERS GO TO WEIGHT NOT ADMISSIBLITY

Perhaps sensing the weakness of her claims that the Provider Chats do not address matters within the scope of the employment relationship, Defendant He defaults to claiming that the providers "were **always** entitled to make their *own* clinical decisions and did *not* need to abide by practices suggested by Dr. Brody, Ms. He or anyone in Done's Medical Leadership Team." ECF No. 421 at 5 (emphasis in original). In support, she cites several examples where the providers express concern about following Done's practice model. But that would go to weight rather than admissibility, and Defendant He ignores that the providers' comments are specifically made in response to her attempts to control and restrict the providers' independent medical judgment. Defendant He's efforts to control providers, despite deceptive contractual representations that providers could exercise their independent medical judgment, is both a key aspect of the government's proof and a clear indicator that Done treated its practitioners as employees rather than genuinely independent contractors. *See United States v. Bonds*, 608 F.3d 495, 505 (identifying "the extent of control exercised by the [principal]" as "the essential ingredient" in the fact-based inquiry for determining whether an agency relationship existed for purposes of Rule 801(d)(2)(D)); *see also In re Coupon Clearing Service, Inc.*, 113 F.3d 1091, 1100 (9th Cir. 1997) ("It is well-established that one who contracts to act on another's behalf and is subject to the other's control, except with respect to his physical control, may still be acting as an agent and also as an independent contractor").

The extent to which Defendant He and others at Done controlled providers is a question of fact. And questions of fact are for the jury to decide, based upon the testimony and evidence admitted at trial. To the extent that Defendant He contends that the evidence is inadmissible because of the legal fiction that the employees were classified as independent contractors, the government should be able to inquire into what she was told by witnesses, including lawyers, about her misclassification of employees as independent contractors. Defendant He's premature attempts to preclude this evidence as a matter of law should be overruled.

Sincerely,

*/s/ Emily Gurskis*

JACOB FOSTER
Acting Deputy Chief
EMILY GURSKIS
Assistant Chief
ARUN BODAPATI
Trial Attorney
Department of Justice
Criminal Division, Fraud Section

KRISTINA GREEN
Assistant United States Attorney
Northern District of California