**THE CHAPMAN LAW FIRM**
Ronald W. Chapman, II, LL.M. *(pro hac vice)*
456 E. Milwaukee Avenue
Detroit, Michigan 48202
Ph: 346-242-7626
E: Ron@Chapmanandassociates.com

**DOWLING DEFENSE GROUP LLC**
John J. Dowling III. *(pro hac vice)*
6201 Fairview Road, Suite 200
Charlotte, North Carolina 28210
Ph: 631-574-7905
E: john@dowlingdefensegroup.com

Attorneys for Defendant David Brody

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY, <br><br> Defendants. | CASE NO.: 3:24-CR-00329-CRB <br><br> **DEFENDANT DAVID BRODY'S MOTION TO MODIFY CONDITIONS OF RELEASE** |

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 7, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 17th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant David Brody will and hereby does move for an order modifying his conditions of release pending sentencing pursuant to the Bail Reform Act, 18 U.S.C. § 3142, *et seq.* This motion is supported by a Memorandum of Points and Authorities, which follows below.

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 4
BACKGROUND ................................................................................................................... 4
    A. Procedural background. ............................................................................................ 4
    B. Post-trial developments related to supervision and the ankle monitor. ..................... 5
        1. Repeated malfunctions of two ankle monitors. ..................................................... 5
        2. Physical irritation, pain, sleep disruption, and health concerns. ........................... 5
        3. Significant and evolving medical needs. ............................................................... 6
        4. Pretrial Services confirms an available, reliable alternative to the ankle monitor. ............ 7
        5. Dr. Brody's record of compliance. ......................................................................... 7
ARGUMENT ......................................................................................................................... 8
  I. The Court should modify Dr. Brody's conditions to permit a less intrusive and problematic alternative to the ankle monitor. ................................................................. 8
    A. The Bail Reform Act. ................................................................................................. 8
    B. The ankle monitor has proved unreliable and prejudicial. ......................................... 9
    C. The device is causing documented physical harm and sleep disruption. .................. 9
    D. Dr. Brody's medical situation requires frequent, sometimes unpredictable care. ..... 9
    E. Smartphone-based GPS monitoring and structured check-ins is an adequate, less restrictive alternative. ............................................................................................. 10
    F. Dr. Brody's compliance and risk profile do not justify continued use of a malfunctioning, harmful device. .............................................................................. 11
REQUESTED MODIFICATIONS ...................................................................................... 11
CONCLUSION .................................................................................................................... 12

## INTRODUCTION

Defendant Dr. David Brody appeared before the Court over eighteen months ago for his arraignment on the Indictment in this case. After the Court released Dr. Brody on an unsecured appearance bond with a series of pre-trial conditions of release, Dr. Brody has fully complied with all of those conditions. At the conclusion of the two-month-long trial in this case, the Court imposed home confinement coupled with an ankle monitor.

Dr. Brody now moves to amend that framework—not because of the home confinement restriction, but because *the ankle monitor itself* is causing ongoing, physical health problems that are so disruptive that he has trouble sleeping and feeling sensation in his foot. He respectfully requests that the Court exercise its authority under the Bail Reform Act to modify his conditions of release by doing away with the ankle monitor requirement and switching to smartphone-based GPS monitoring. This mechanism is less intrusive than necessary to ensure Dr. Brody's compliance with home confinement, and Pretrial Services has indicated that this mechanism is a viable alternative.

## BACKGROUND

### A. Procedural background.

In the summer of 2024, a federal grand jury sitting in this District returned a seven-count Indictment charging defendants Dr. Brody and his business partner Ruthia He with a series of offenses related to their work at, and operation of, Done Global, Inc., a telemedicine company providing treatment for adults with attention deficit hyperactivity disorder. ECF No. 1. The Indictment charged defendants with conspiracy to violate the Controlled Substances Act, four counts of substantive violations of the Act, conspiracy to commit health care fraud, and conspiracy to obstruct justice. 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C), 18 U.S.C. §§ 1349 and 1512(k).

At the conclusion of a two-month-long trial in which both defendants were convicted on all offenses, the Court ordered that Dr. Brody be placed on home confinement. Trial Tr. p. 5706:9-25. The Court further ordered that Dr. Brody be subject to location monitoring through the means of an ankle

monitor "to verify [his] compliance with home incarceration." *Id.* at 5706:16-17. The Court ordered that Dr. Brody be "restricted to his residence at all times except for medical necessities and court appearances or other activities specifically approved by the Court." *Id.* at 5706:18-20.

### B. Post-trial developments related to supervision and the ankle monitor.

#### 1. Repeated malfunctions of two ankle monitors.

Dr. Brody's first GPS ankle monitor malfunctioned on multiple occasions, including repeated false alerts indicating noncompliance. *See* Declaration of David Brody ¶ 2 (Dec. 16, 2025) (herein the "Brody Decl."). As a result, Pretrial Services replaced the device. The replacement device has also malfunctioned. Most recently, it generated a false alert that Dr. Brody had left his residence at approximately 5:20 a.m. on a Sunday. In fact, Dr. Brody was at home and asleep. Pretrial Services Officer Josh Libby personally informed Dr. Brody that this alert was erroneous. Brody Decl. ¶ 2. These recurring false alerts—across two different devices—demonstrate a reliability problem with continued ankle-based monitoring in Dr. Brody's case. The condition is not functioning as intended, yet it continues to expose Dr. Brody to unwarranted suspicion and stress in the shadow of sentencing.

#### 2. Physical irritation, pain, sleep disruption, and health concerns.

Dr. Brody has been experiencing ongoing, physical side effects from the ankle monitor, including:

- Persistent skin irritation at the contact site;

- Increasing localized pain and pressure; and

- Sleep disturbances caused by the device's discomfort and rigidity.

Brody Decl. ¶ 3.

Dr. Brody has discussed these symptoms with his primary care physician, Dr. Elizabeth Etemad, and anticipates that the device-related irritation may itself require medical evaluation and possible treatment.

The attached letter from Dr. Etemad confirms that Dr. Brody "has had some ongoing health issues with neuropathy." Exhibit A. Neuropathy is a nerve disorder that often causes "numbness, prickling, or tingling in your feet or hands." *Peripheral Neuropathy*, MAYO CLINIC (last visited Dec. 16, 2025), https://rb.gy/ll72hw. Dr. Etemad explains in her letter to the Court that Dr. Brody has been experiencing "a sensation of cold feet that is chronic." Exhibit A. She further confirms that Dr. Brody "has been having difficulty with [the] ankle monitoring system and discomfort in his ankle with wearing the ankle monitoring device." *Id.* As a result, Dr. Etemad "would recommend [a] shift to a different mode of monitoring if this is available that would not aggravate [his] pre-existing condition." *Id.*

Dr. Etemad explains even more directly in a more recent letter to the Court that "[i]n my medical opinion, I think it would be helpful to Dr. Brody to transition to an alternative monitoring methods [sic] that does not [cause] physical pressure on the ankle." Exhibit B. She further explains that "[t]his method would reduce the physical irritation and permit some more consistent access to medical appointments without compromising supervisory oversight." *Id.*

### 3. Significant and evolving medical needs.

Following a recent physical examination and urinalysis showing blood (hematuria), Dr. Brody now requires multiple follow-up medical evaluations, including:

- Follow-up appointments with his primary care physician;
- Imaging studies;
- Specialty referrals and consultations;
- Additional lab work; and
- Weekly psychotherapy sessions.

As Dr. Etemad explains in her more recent letter, "Dr. Brody requires multiple medical appointments, 1 more urgent appointment for hematuria with urologist which was delayed due to trial." Exhibit B.

Under the current GPS ankle-monitoring regime, each of these appointments typically requires prior individualized approval and coordination with Pretrial Services. For a patient with evolving medical needs and appointments that may need to be scheduled on short notice, this process is burdensome, impractical, and potentially detrimental to timely care.

### 4. Pretrial Services confirms an available, reliable alternative to the ankle monitor.

Pretrial Services Officer Josh Libby has confirmed that smartphone-based GPS monitoring and structured daily check-ins is available for Dr. Brody and would satisfy Pretrial's supervision needs. This alternative would:

- Provide reliable location verification and compliance monitoring;

- Eliminate device-related skin irritation, pain, and sleep disturbances;

- Avoid repeated false alerts associated with the current ankle device; and

- Reduce the logistical barriers posed by an ankle monitor.

Subject to the Court's approval, Pretrial Services stands ready to implement this less restrictive and more reliable alternative form of monitoring in lieu of the current ankle device.

### 5. Dr. Brody's record of compliance.

Dr. Brody has been fully compliant with all conditions of his release. He has:

- Maintained a stable residence;

- Attended all required court appearances;

- Maintained regular contact with his counsel and with Pretrial Services;

- Complied with all supervision directives; and

- Engaged consistently in medical and mental health treatment as permitted.

Nothing in the record suggests that Dr. Brody poses a risk of nonappearance or danger that requires continuation of a malfunctioning ankle monitor, particularly when a less intrusive yet robust supervision method is available and endorsed by Pretrial.

## ARGUMENT

**I.  The Court should modify Dr. Brody's conditions to permit a less intrusive and problematic alternative to the ankle monitor.**

The Court should modify Dr. Brody's conditions of release to permit a less intrusive and problematic alternative to the ankle monitor. The ankle monitor is more restrictive and burdensome than necessary to ensure Dr. Brody's compliance with home confinement, and a sufficient alternative exists. Because he has complied with all conditions of pre-trial and post-trial release, because he is not a flight risk, because of his age, and because of his medical conditions that are exacerbated by the ankle monitor, the Court should modify his conditions of release to permit smartphone-based GPS monitoring with structured daily check-ins at the discretion of Pretrial Services.

**A.  The Bail Reform Act.**

The Bail Reform Act governs the release or detention of criminal defendants pending judicial proceedings. *See* 18 U.S.C. § 3142, *et seq.* Under the Act, this Court has broad authority to impose, as a condition of release, "any [] condition that is reasonably *necessary* to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(xiv) (emphasis added).

And this Court additionally had broad authority to amend the conditions of Dr. Brody's release "at any time . . . to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3).

"Pretrial detention provisions are regulatory, not punitive." *United States v. Quintero*, 995 F.3d 1044, 1060 (9th Cir. 2021) (citing *United States v. Salerno*, 481 U.S. 739, 747 (1987)). In the Act, Congress directed the courts to impose "the least restrictive [conditions], or combination of conditions,"

"that will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(c)(1)(B).

### B. The ankle monitor has proved unreliable and prejudicial.

Here, two separate GPS ankle monitors have malfunctioned for Dr. Brody, generating repeated false alerts, including the recent false report that he left his residence at 5:20 a.m. The problem is not a single isolated glitch; it is a recurring pattern.

A release condition must function reliably to serve its legitimate purpose. A device that repeatedly issues false violation alerts undermines the integrity of the supervision system, risks unjustified suspicion of noncompliance, and imposes unnecessary psychological harm. Continuing to rely on a malfunctioning device—when a more reliable alternative exists—exceeds what is "necessary" under section 3142.

### C. The device is causing documented physical harm and sleep disruption.

Ankle monitoring is designed as a supervisory tool, not as a source of injury. Here, the device has caused persistent skin irritation, increasing localized pain and pressure, and substantial sleep disruption. Dr. Brody has already discussed these symptoms with his primary care physician and anticipates further assessment. *See* Exhibit A.

Given the medical documentation and ongoing symptoms, continuing to require a device that physically harms Dr. Brody is excessive and unnecessary under § 3142, particularly where smartphone-based GPS monitoring and structured daily check-ins can achieve the same supervisory objectives.

### D. Dr. Brody's medical situation requires frequent, sometimes unpredictable care.

Dr. Brody's recent lab results, including hematuria, *see* Exhibit A, require a series of follow-up appointments, imaging, specialist visits, lab work, and weekly psychotherapy sessions. These appointments may need to be scheduled quickly and adjusted in response to medical findings.

Under the current regime, each new appointment typically triggers a separate process to obtain advance approval from Pretrial. For a person undergoing active medical evaluation and treatment, this requirement significantly burdens access to care and creates the risk of delay in addressing potentially serious conditions.

A smartphone-based GPS and structured check-in regime would maintain robust oversight while allowing more practical scheduling and timely medical treatment, better aligning supervision with medical necessity.

### E. Smartphone-based GPS monitoring and structured check-ins is an adequate, less restrictive alternative.

Pretrial Services has confirmed that a smartphone-based GPS monitoring and structured daily check-ins (or another schedule as Pretrial deems appropriate), is both available and adequate for Dr. Brody. This approach:

- Provides precise location tracking;

- Allows Pretrial to verify compliance daily (or more frequently if desired);

- Eliminates the physical harms and sleep disruption caused by the ankle monitor; and

- Reduces the incidence of device-related false alerts.

Smartphone-based GPS monitoring is an established tool used by federal supervision agencies as a less intrusive alternative to ankle bracelets in appropriate cases, providing reliable location information and regular contact without the same physical burdens.

Given Dr. Brody's history of compliance, stable ties, and active engagement with medical care, smartphone-based GPS monitoring and structured call-ins provides an effective, less restrictive alternative that fully satisfies Congress's objectives under the Bail Reform Act.

**F.    Dr. Brody's compliance and risk profile do not justify continued use of a malfunctioning, harmful device.**

Dr. Brody's consistent compliance with all release conditions, his stable residence, ongoing relationship with counsel and Pretrial, and his active engagement with medical and mental health treatment demonstrate that he is neither a risk of flight nor a danger requiring the most intrusive form of GPS monitoring.

The Government's legitimate interests in ensuring appearance and community safety can be fully protected through smartphone-based monitoring and structured check-ins. In contrast, continued use of a malfunctioning ankle monitor that causes medical harm and psychological distress is more restrictive than necessary and inconsistent with the statutory requirement that conditions be the least restrictive means adequate to manage any risk.

## REQUESTED MODIFICATIONS

For the reasons set forth above, Dr. Brody respectfully requests that the Court modify his release conditions as follows:

1. Remove the GPS ankle monitor currently required as a condition of release;

2. Authorize implementation of smartphone-based GPS monitoring to be administered and supervised by U.S. Pretrial Services; and

3. Require structured daily check-ins (or such other reporting schedule as Pretrial Services deems appropriate) in conjunction with smartphone-based GPS monitoring.

**CONCLUSION**

Dr. Brody is seventy years old with documented medical conditions that have become exacerbated by an unnecessary mechanism used to monitor compliance with his conditions of release. A less restrictive and burdensome mechanism is available. Dr. Brody respectfully requests that the Court grant this motion in its entirety.

Dated: December 16, 2025                    THE CHAPMAN LAW FIRM

By:     /s/  Ronald W. Chapman
        Ronald W. Chapman, II, LL.M.

DOWLING DEFENSE GROUP LLC

By:     /s/  John J. Dowling III.
        John J. Dowling III.

*Attorneys for Defendant
David Brody*